UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:21-cr-00041-5-JL |
| ) | |
| IAN FREEMAN, ET AL ) | |
| ) | |

## GOVERNMENT'S OBJECTION TO DEFENDANT NOBODY'S MOTION FOR REVOCATION OF DETENTION ORDER

The United States of America, by John J. Farley, Acting United States Attorney for the District of New Hampshire, respectfully objects to Defendant Nobody's Motion for Revocation of Detention Order. In support of its objection, the Government states as follows:

1. The defendant, Nobody, was indicted on one count of Conspiracy to Operate an Unlicensed Money Transmitting Business, 18 U.S.C. §§ 371, 1960(a) and (b)(1)(B), one count of Conspiracy to Commit Wire Fraud, 18 U.S.C. §§ 1343, 1349, and three counts of Wire Fraud, 18 U.S.C. § 1343. The defendant was arrested on March 16, 2021, and stipulated to pretrial detention without prejudice.

2. The defendant subsequently moved for a detention hearing, *see* ECF No. 71, and United States Magistrate Judge Lynch held a hearing on the matter on May 28, 2021. The government moved for detention under 18 U.S.C. § 3142(f)(2)(B), arguing that this case involves a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror, largely based upon statements made by the defendant in a recorded jail call following his arrest.

3. Following a hearing at which both the Government and the defendant presented exhibits, and the defendant himself testified, Magistrate Judge Lynch found that by clear and convincing evidence, the defendant presents a danger to law enforcement, probation officers,

government employees and the public, and ordered him detained pending trial.  *See* ECF No. 76.  The defendant now appeals that order.

## I.     Standard of Review – Appeal of Detention Order

4.     A district court reviewing a magistrate judge's order of pretrial detention must "engage in de novo review of the contested order." *United States v. Tortora*, 922 F.2d 880, 884 n. 4 (1st Cir. 1990); *see also United States v. Perozzi*, No. 09-cr-117-16-SM, 2009 WL 2929292, at *2 (D.N.H. Sept. 9, 2009) (conducting de novo review of magistrate judge's detention order). "De novo review, however, does not require a district judge to reinvent the wheel; if the magistrate judge has carefully and correctly analyzed the detention question in a written decision, no purpose is served by attempting to creatively rephrase the magistrate judge's analysis." *United States v. Cantwell*, No. 20-cr-00006-PB, 2020 WL 420834, at *1 (D.N.H. July 22, 2020). "What matters is that the district judge must independently assess the evidence and reach his or her own conclusions." *Id.*  The district court may review the record before it, and need not hold a new hearing on the motion to revoke the detention order.  *See United States v. Diaz*, No. 10-cr-7-JD, 2010 WL 840471, at *2 (D.N.H. March 3, 2010) (court reviewed detention order de novo by considering defendant's motion for bail pending trial, audio recording of the bail hearing, exhibits submitted at the bail hearing, defendant's motion for revocation of detention order, and government's objection).

5.     Where the government moves for detention pursuant to 18 U.S.C. § 3142(f)(2)(B), the court must find both that "there is a serious risk defendant will engage or attempt to engage in the conduct set forth in § 3142(f)(2)(B) *and* that no condition or combination of conditions set forth in § 3142(c) will *reasonably* assure the safety of any other person and the community." *United States v. Ploof*, 851 F.2d 7, 12 (1st Cir. 1988) (emphasis in

2

original). In making its bail determination, courts are required to consider information regarding: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any other person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The government bears the burden of persuading the court that no condition or combination of conditions will reasonably assure the safety of another or the community by clear and convincing evidence. *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991).

**II.     The Defendant's Jail Call**

6.     Following his arrest, the defendant made a recorded jail call in which he made several threatening statements directed at law enforcement, the government, and his own lawyer. The call itself is approximately 16 minutes long. *See Exhibit 6*. The Government provided this call, along with five audio clips taken from the call as exhibits at the defendant's detention hearing.[1] During the call, the defendant complained about his "corrupt fucking piece of shit attorney," and stated, "that motherfucker needs to fucking die." *Exhibit 1*. He went on to complain about the "evil fucking pieces of shit who run the system." *Id.* At another point, the defendant said, "Anybody working for this piece of shit system is evil," and the person he was speaking with responded, "I couldn't unload a .50 cal into all their fucking heads or anything, there was nothing I could have done to stop it." *Exhibit 2*.

7.     The defendant's demeanor varies throughout the conversation, becoming increasingly angry at several points. The defendant complains to his friend that he is extremely upset "that these pieces of shit have done this," and goes on to say that, "somebody needs to start

---

[1] While these clips are in the record and the Court has access to the record, these exhibits are being reproduced with the Government's Objection for ease of reference.

shooting pigs, that's the only way, somebody needs to start shooting pigs." *Exhibit 3*. The defendant told his friend, "I'm not scared of going to prison, I'll just get some heroin and kill myself. . . . If I die, I die." *Exhibit 4*. At another point in the conversation, the defendant said, "It's time for the fucking boogaloo. That's how this thing ends, when we end this fucking government." *Exhibit 5*.

### III.   This case involves a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness.

8.   This Court must first find that this case involves a serious risk that the defendant will obstruct or attempt to or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness. *See* 18 U.S.C. § 3142(f)(2)(B); *Ploof*, 851 F.2d at 12. The evidence more than supports a finding of such a serious risk. While the defendant argued in his initial motion for a detention hearing, and testified at the detention hearing, that his comments were just the product of him venting frustration to a friend, the context of statements, as well as the defendant's history, make clear that these threats must be taken seriously.

9.   The most serious evidence that the defendant poses a serious risk to obstruct justice or threaten, injure, or intimidate a prospective witness are the defendant's statements about wanting people to start murdering police officers. This statement was more than general blustering or "letting off steam," but a specific reference to the very authorities who had arrested and charged him with crimes. He first referenced how upset he was that the federal authorities, or "these pieces of shit," had arrested and charged him, and then immediately followed that statement up by calling for the murder of police officers as "the only way," to right the perceived injustice of his situation. These very law enforcement officers that the defendant directed his ire

towards are very likely to be witnesses in this case. These agents are local and they continue to investigate this case.

10.     In assessing how serious the risk is that the defendant would obstruct justice, the Court need only listen to the defendant's own words. The defendant said that if he were sentenced to prison, he would take heroin and kill himself. The defendant has defined the outcome of this case in terms of life and death. Certainly a defendant that would rather die than be sentenced to prison poses a serious risk to carry out the very obstruction which he explicitly called for in the same phone call.

11.     The defendant called for the death of his own court appointed attorney because of what he perceived to be bad legal advice that he received. Notably, that attorney no longer represents the defendant. Violent threats against persons involved in this case that the defendant perceives as having wronged him is exactly the type of obstruction of justice that this Court should be considering when assessing the defendant's risk.

12.     The defendant's statements about wanting the "boogaloo," and that this will bring about the end of the government, support the conclusion that the defendant poses a serious risk of obstructing justice. At the detention hearing, the parties disputed what the defendant meant with his "boogaloo" reference. The defendant testified that this was just a reference to an internet meme and was just an inside online joke. "The term *boogaloo* . . . can refer to the purveyors of [an absurdist internet] culture or to an event: a violent revolution some [] hope to hasten, dubbed Civil War 2: Electric Boogaloo." Michael J. Mooney, *The Boogaloo Bois Prepare for Civil War,* THE ATLANTIC (Jan. 15, 2021, 8:47 AM), https://www.theatlantic.com/politics/archive/2021/01/boogaloo-prepare-civil-war/617683/. In the context of the phone call, the defendant referred to the boogaloo as "how this thing ends,

when we end this fucking government." The defendant's violent rhetoric about killing police officers, calling for the death of his attorney, and calls to end the government, all demonstrate a serious risk that he would obstruct justice or threaten, injure, or intimidate law enforcement witnesses if he were released.

13. Outside of this call, it was not the first time that the defendant had called for the deaths of government employees. At the hearing, the defendant testified that he had a public Twitter account, @Nobody4Governor, where, 6 days before he was arrested, he posted a call for using guillotines on government officials.



The defendant testified that this was merely extremely provocative language that was obviously meant in jest. While the defendant claims that this was a statement made in jest, at the January 6 riots in Washington, D.C., a gallows with a noose was erected in front of the Capitol.



Andrew Caballero-Reynolds/AFP, GETTY IMAGES. On the same day, a guillotine was set up out front of the Arizona State Capitol in Phoenix. *See About 1,000 Trump supporters protest at*

*Arizona Capitol as rioters storm US Capitol*, ARIZONA REPUBLIC (Jan. 6, 2021, 7:30 PM), https://www.azcentral.com/story/news/politics/elections/2021/01/06/dps-enhances-security-arizona-capitol-pro-trump-supporters-rally-against-election-results/6569566002/. In light of these recent events, the defendant's calls for a guillotine are not as obviously in jest as he claims. When taken in context with the defendant's statements on the jail call less than a week later, the evidence is clear that the defendant poses a serious risk of obstructing justice or threatening, injuring, or intimidating potential law enforcement witnesses.

    **IV.**     **The defendant poses a danger to the community that cannot be mitigated with conditions.**

    14.     In addition to finding that there is a serious risk that the defendant will engage or attempt to engage in the conduct set forth in § 3142(f)(2)(B), the Court must also find that "no condition or combination of conditions set forth in § 3142(c) will reasonably assure the safety of any other person and the community." *Ploof*, 851 F.2d at 12. "In common parlance, dangerousness to the community and obstruction of justice may not be separate and distinct categories: where there is a serious risk that a defendant, if released, would obstruct justice or intimidate witnesses, it could, in ordinary speech, reasonably be said that the person was a danger to the community." *Id.*

    15.     In addition to the evidence of obstruction, the defendant's history and characteristics provide additional evidence of his dangerousness to the community. The defendant has several convictions for possession of controlled substances, a conviction for obstruction of government administration, a criminal contempt charge, and several felony convictions for possession with intent to distribute controlled drugs for which he was sentenced to 12 months in jail.

16. The defendant has a history of defying court supervision. Following his conviction and incarceration on felony drug charges, the defendant violated his probation by possessing a dangerous weapon and using it in a threatening manner, as well as by continuing to use controlled substances. During the execution of a search warrant on the day of the defendant's arrest, inside his bedroom agents found extensive drug paraphernalia, including white powder, a rolled up dollar bill, a baggie with yellow powder, boxes of modafinil and armodafinil, which are both FDA controlled drugs. Inside a locker in the defendant's room, agents found a rock of methamphetamine that lab tests confirmed weighed 8.5 grams and was 99% pure. While the defendant is not charged with the drugs, notably, a distribution charge with this weight would subject the defendant to a 5-year mandatory minimum sentence.

17. The government's case against the defendant is strong. He is charged with conspiracy to operate an unlicensed money servicing business which involved receiving deposits or wire transfers into a bank account and paying out that amount in bitcoin. There is a contract signed between the defendant and co-defendant Ian Freeman which lays out the precise terms of the operation whereby funds will be deposited into the defendant's bank accounts and Freeman would distribute bitcoin in return. *See Exhibit 7*. A search of co-defendant Ian Freeman's computer revealed numerous photographs of individuals holding handwritten signs indicating that they were buying bitcoin from the Church of the Invisible Hand, the church run by defendant Nobody. The wire fraud charges are based upon lies told to the banks where the defendant maintained accounts, directing customers to indicate that deposits were for "church donations" so that banks would not become aware of the true nature of the operation. The government has obtained numerous wire transfer records and deposit slips for the defendant's accounts with this designation of "church donation."

18. These facts, when combined with the evidence already discussed with respect to the serious risk of obstruction of justice or intimidation of witnesses, demonstrate by clear and convincing evidence that there are no conditions or combination of conditions that will reasonably assure the safety of any other person and the community.

WHEREFORE, the United States respectfully requests that this Court deny the defendant's Motion for Revocation of Detention Order.

                                          Respectfully submitted,

                                          JOHN J. FARLEY
                                          Acting United States Attorney

Dated: June 24, 2021                       /s/ John J. Kennedy
                                          Assistant U.S. Attorney
                                          NH Bar # 19557
                                          53 Pleasant Street, 4th Floor
                                          Concord, New Hampshire 03301
                                          603-225-1552
                                          john.kennedy2@usdoj.gov

                                          /s/ Seth R. Aframe
                                          Assistant U.S. Attorney
                                          53 Pleasant Street, 4th Floor
                                          Concord, New Hampshire 03301
                                          603-225-1552