IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

CRIMINAL CASE NO. 21-CR-041-JL-05

UNITED STATES OF AMERICA

vs.

NOBODY,

Defendant(s).
______________________________________/

**DEFENDANT NOBODY'S MEMORANDUM IN SUPPORT OF**

**MOTION FOR PRETRIAL RELEASE WITH CONDITIONS**

# TABLE OF CONTENTS


TABLE OF CONTENTS .................... i

TABLE OF AUTHORITIES .................... ii

I. STATEMENT OF THE CASE .................... 1

II. STATEMENT OF FACTS .................... 1

III. ARGUMENT .................... 2

A. The Bail Reform Act only permits pretrial detention in limited, defined circumstances. .................... 2

B. There is no lawful basis to detain the defendant under §3142(f)(1). .................... 4

C. There is no lawful basis to detain the defendant under §3142(f)(2)(A). .................... 4

1. The charges are non-violent and the defendant is not the government's target. .................... 4

2. The evidence against the defendant is weak, misleading and unfairly prejudicial. .................... 5

3. The defendant's history and characteristics beg for pretrial release. .................... 6

4. The defendant presents no real present danger to any person or the community. .................... 7

5. There are available conditions to assure the defendant's presence as required. .................... 8

D. There is no lawful basis to detain the defendant under §3142(f)(2)(B). .................... 9

IV. CONCLUSION .................... 11

# TABLE OF AUTHORITIES

## Cases

*United States v. Palmer-Contreras*, 835 F.2d 15, slip op. at 5-6 (1st Cir. 1987). .......................... 4
*United States v. Patriarca*, 948. F.2d 789, 792 (1st Cir. 1981). .................................................. 11
*United States v. Perez-Franco*, 839 F.2d 867, 870 (1st Cir. 1988). ............................................. 4
*United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) ................................................................. 3
*United States v. Rivera-Santiago*, 872 F.2d 1073, 1079 (1st Cir. 1989). ...................................... 5
*United States v. Salerno*, 481 U.S. 739, 747 (1987). ...................................................................... 3

## Statutes

18 U.S.C. §16 ................................................................................................................... 5
31 CFR §1010.100(ff)(5)(ii) ................................................................................................... 5
N.H. Rev. Stat. Ann §318-B:2-c ............................................................................................. 8
N.H. Rev. Stat. Ann. 126-X ................................................................................................... 8
The Bail Reform Act, 18 U.S.C. §§ 3141, *et seq*. ..................................................................... 2

## Other Authorities

Anessa Allen Santos, *What's the Big Deal About Blockchain,* Florida Bar Journal Vol. 94, No. 2. (2020). ......................................................................................................................... 6
Hugh Son, *Bank of America tech chief is skeptical on blockchain even though BofA has the most patents for it.* CNBC Finance, Mar. 26, 2019. ............................................................... 6
Omri Wallach, *The World's Top 50 Influencers Across Social Media Platforms.* Visual Capitalist, May 14 2021. https://www.visualcapitalist.com/worlds-top-50-influencers-across-social-media-platforms/. ......................................................................................... 11
Rich Paul Vindicated on Weapons Charges: VOP Hearings 2014 07 24 (Jul. 26, 2014), https://www.youtube.com/watch?v=aadKRVQ8Pi8 ................................................................. 8

## Rules

2009-FIN-G001 ................................................................................................................. 5

COMES NOW THE DEFENDANT, NOBODY, by and through his undersigned counsel, and does hereby file this Memorandum in Support of Pretrial Release with Conditions.

## I. STATEMENT OF THE CASE

Defendant was indicted of Conspiracy to Operate Unlicensed Money Transmitting Business in violation of 18 U.S.C. §§ 371, 1960(a) and (b)(1)(B), Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1343, 1349; and three counts of Wire Fraud in violation of 18 U.S.C. §1343. Indictment, ECF No. 1. At arraignment on March 16, 2021, and upon advice and counsel of his court-appointed Attorney John Apruzzese, the defendant pled not guilty and stipulated to detention without prejudice pending trial.

On May 25, 2021, the defendant filed a motion for pretrial release together with three letters of support from members of the community. ECF No. 71, 73. In anticipation of the hearing, the government filed exhibits of a phone call made by defendant from jail and used them to argue for detention on the grounds of dangerousness. ECF No. 74. At the hearing's conclusion on May 28, 2021, Magistrate Lynch found the phone call supported the government's argument for dangerousness, and ordered the defendant detained pending trial. ECF No. 76.

On June 19, 2021, the defendant filed a motion to revoke the magistrate's detention order and a made a request for hearing, to which the government filed an objection shortly thereafter. ECF No. 84; ECF No. 93. A hearing was held by video conference on July 23, 2021, resulting in an order from this court for both parties to make filings addressing the defendant's argument that the standing detention order is legally untenable and any other desired arguments. Accordingly, the defendant files this memorandum requesting revocation of the magistrate's order for pretrial detention and to grant release on conditions substantially similar to the other co-defendants.

## II. STATEMENT OF FACTS

In exclusive reliance on 18 U.S.C. §3142(f)(2)(B) of the Act as grounds for pretrial

detention, the government contends that the contents of a recorded phone call made from jail by the defendant is of grave concern, and that releasing the defendant poses a serious risk that he will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror, or otherwise pose a serious risk to any person or the community. In consideration of the government's argument, Magistrate Lynch did follow the rules and properly considered whether any conditions set forth in §3142(c) could reasonably assure the appearance of the defendant as required and the safety of any other person and the community, as well as the four factors of §3142(g). *See* ECF No. 76. Although the government pointed to information that might support detention in addition to the phone call in evidence, the magistrate nevertheless found that

> [t]hose factors, while relevant, standing alone likely would not support a dangerousness finding. However, when one adds the threatening content of a recorded conversation while the defendant was incarcerated, the balance tips in favor of detention. . . . [Moreover,] the defendant's aggressive, vengeful, and hostile tone, combined with the severity of the threats, provide clear and convincing evidence that the defendant, if released, would present a danger to the community. *Id*. at 3, 4.

In deciding to order detention, the magistrate relied on several principal cases cited in its order. However, it is the defendant's position that these cases and other legal authority actually instruct this court to release the defendant pending trial.

## III. ARGUMENT

### A. The Bail Reform Act only permits pretrial detention in limited, defined circumstances.

In federal criminal proceedings, release and detention determinations are governed by The Bail Reform Act, 18 U.S.C. §§ 3141, *et seq.* (the "Act"). The Act directs the judicial officer to order pretrial release unless ". . . after a hearing pursuant to §3142(f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person or the community." *United States v. Ploof*,

851 F.2d 7, 11 (1st Cir. 1988); 18 U.S.C. §3142(e). If the judicial officer determines that release on personal recognizance will not reasonably assure appearance of the person as required ("risk of flight") or will endanger the safety of any other person or the community ("risk of danger"), then the judicial officer shall order pretrial release subject to the least restrictive conditions that reasonably assure the person's appearance and the safety of any other person and the community. 18 U.S.C. §3142(c). To assist the judicial officer in constructing creative conditions for pretrial release, Congress provided a list of 14 conditions with varying degrees of specificity that may be combined to mitigate risk of flight or danger. *Id*.

Notably, "[t]he Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987). The government may only move for detention on the basis of either §3142(f)(1) or (f)(2). *See Ploof,* 851 F.2d at 10. If the motion is made under (f)(1), then the case must involve one or more of the five categories of offenses therein described. Conversely, (f)(2) only permits detention in a case involving "a serious risk that the person will flee; or a serious risk that the person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." §3142(f)(2). Further, where the government moves for detention based on a risk of danger under (f)(2)(B), it can only be ordered in cases that also involve one of the (f)(1) categories of offenses. *Ploof,* 851 F.2d at 11-12.

Regardless of whether the government moves for pretrial detention under either (f)(1) or (f)(2), it can only be ordered where there is clear and convincing evidence that there are no conditions that can reasonably mitigate the risk of flight or danger. *See* §3142(g). When considering the totality of the evidence presented in the detention hearing about the applicability of these conditions, the judicial officer shall consider all the available information provided by the defense pursuant to §3142(g). In this case, the defendant contends that there is no lawful

basis to detain him under either §3142(f)(1) or (f)(2) and that continued detention is an egregious violation of his civil rights.

**B. There is no lawful basis to detain the defendant under §3142(f)(1).**

Section 3142(f)(1) of the Act provides a rebuttable presumption in favor of detention upon motion of the government attorney or the judicial officer only in offenses involving a crime of violence, a violation of section 1591, or an offense in section 2332b(g)(5)(B) carrying a maximum term of 10 or more years; an offense carrying a maximum sentence of life or death; a drug offense carrying a maximum term of 10 or more years; repeat offenders of the first three categories; or any felony involving a minor victim, a firearm, destructive device, or other dangerous weapon. Because the defendant has not been charged with any of these offenses, there is no lawful basis to move for detention under (f)(1).

**C. There is no lawful basis to detain the defendant under §3142(f)(2)(A).**

Section 3142(f)(2)(A) of the Act provides for detention upon motion of the government attorney or the judicial officer only in cases involving a *serious* risk that the accused will flee. "The burden of persuading the court that 'no condition or combination of conditions will reasonably assure' the defendant's presence at trial rests with the government." *United States v. Perez-Franco,* 839 F.2d 867, 870 (1st Cir. 1988). When addressing risk of flight, the judicial officer must likewise consider whether any conditions of release will reasonably assure the defendant's appearance as required, and also the available information concerning the four §3142(g) factors discussed below. While the government has never suggested the defendant poses a flight risk, because this court's review is *de novo*, the defendant is compelled to defend against such potential allegations. Also, the analysis of four factors is equally relevant and applicable to arguments for detention based on (f)(2)(B).

***1. The charges are non-violent and the defendant is not the government's target.***

The Bail Reform Act limits pretrial detention to the most serious of crimes. *Ploof,* 851 F.2d at 11(*Citing Salerno,* 481 U.S. at 747). None of the offenses charged against the defendant are a crime of violence within the meaning of 18 U.S.C. §16, nor do they otherwise fall within the categories of offenses identified in §3142(f)(1). The defendant staunchly denies knowing about or agreeing to a plan with Ian Freeman to violate any laws or defraud banks. In any case, the government has conceded on the record that it is Freeman, and not the defendant, who is the primary target of this case which can hardly characterize the defendant as a serious risk.

***2. The evidence against the defendant is weak, misleading and unfairly prejudicial.***

To find the defendant guilty of conspiracy, the government must prove that the defendant had a specific intent to agree to a common purpose, and an intent to commit the substantive offense for which conspiracy is claimed, together with at least one other person. *See United States v. Rivera-Santiago,* 872 F.2d 1073, 1079 (1st Cir. 1989). In support of its claims, the government filed with this court a copy of an agreement signed between the defendant and Freeman in Sept. 2019, and an amendment signed thereafter in Feb. 2020. ECF No. 93-7. Both versions describe the defendant as an "assistant" to Freeman. However, even if the activities therein described are an accurate reflection of the parties' behavior, the documents are woefully insufficient to demonstrate any of the offenses charged because "[w]hether a person is a money transmitter under FinCEN's regulations is a matter of facts and circumstances." 2009-FIN-G001; 31 CFR §1010.100(ff)(5)(ii). Notably, the defendant was not charged with operating an unlicensed money services business; so, one can infer his role here is, at most, marginal.

Continuing, the agreements do correctly state that financial institutions frown on banking cryptocurrency operations; however, the government characterization that the agreements are strong evidence of the defendant's guilt in defrauding banks wary of cryptocurrency businesses is a logical fallacy. Cryptocurrency businesses compete with banks for payment rail fees.

"Payment rails, or how to move money among people, businesses, or accounts, is the principal driver of evolving financial technology (FinTech), and for this reason, it has received more regulatory attention . . . ."[1] Consequently, when people use this new technology that excludes traditional banks, it eats into bank profits. Because banks have no legal duty to serve all prospective customers, they can, and do, exhibit antitrust behavior unfettered against the fintech industry at large. For example, although Bank of America refuses to bank FinCEN registered money transmitters of cryptocurrency, they have consistently held more blockchain-related patents than any other financial firm, including payment companies Mastercard and PayPal.[2]

By its allegations, the government suggests that the defendant had a duty to disclose to one or more banks the nature of every transaction conducted through his accounts, a premise that simply not true. The government further suggests that by permitting another person to have some authority to transact with the defendant's bank account is evidence of fraud. This premise is also untrue, but more importantly, it misleads the court. The reality is that organizations the world over engage in transactions every day, and especially when those organizations are non-profit, they rely on a network of trusted confidants to help. It is entirely possible that if Freeman is guilty of the offenses charged, that the defendant is a victim as well. The only difference is that Nobody is being held without bond while all other co-defendants have been released.

***3. The defendant's history and characteristics beg for pretrial release.***

The defendant, Nobody, is arguably a public figure in the community of Keene where he has resided for the last decade. A radio talk show host and former candidate for Governor of New Hampshire, Nobody hails from Ann Arbor, Michigan where his elderly parents still reside.

---

[1] Anessa Allen Santos, *What's the Big Deal About Blockchain,* Florida Bar Journal Vol. 94, No. 2. (2020).

[2] Hugh Son, *Bank of America tech chief is skeptical on blockchain even though BofA has the most patents for it.* CNBC Finance, Mar. 26, 2019.

He has a long and admirable career as a computer programmer and enjoys studying civics, philosophy and economics in his free time. A proud libertarian, Nobody is appreciated most by his audience for his colorful and infectious enthusiasm for constitutional rights, *laissez-faire* government, and activism by peaceful protest. The defendant is an educated and well-spoken gentlemen with the support of his friends, family, and the greater community. Even N.H. Rep. Mark Warden recognizes Nobody as a "… proponent of peaceful protest, free speech, expanding freedom and advancing peace at the local, state and global level." ECF No. 73. In his letter of support, Rep. Warden urges this court "… to look kindly on Mr. Paul as a productive citizen, one who promotes the very ideals of liberty and freedom of speech and association on which this country was founded." ECF No. 73.

If Nobody were to be successfully accused of something, it would be of too much honesty, even at his own expense. At the risk of self-incrimination, he has openly and consistently shared with law enforcement and judicial officers that because he was traumatized from his wife's agonizing death from cancer, he is a strong advocate for medical marijuana which he uses for depression. If he were released, he does have means of support by continuing to work as a software development, and he does have a place to live. However, because his financial means are limited, he has no resources with which to flee.

***4. The defendant presents no real present danger to any person or the community.***

The defendant does have a limited criminal history mainly involving marijuana for which he has been incarcerated and placed on supervised release, but he has never been found violent or a danger to the community. In fact, there is clear and convincing evidence of his peacefulness. In 2014, Nobody was charged with violation of probation for continuing the use of marijuana and for allegedly wielding a camera monopod in a threatening manner during a peaceful protest that turned ugly. During the VOP hearing at Cheshire Superior Court, Judge Kissinger found that

in many respects, the defendant had complied with the rules and conditions of probation, and that the defendant was generally law abiding aside from his continued marijuana use, a fact the defendant openly conceded.[3] Judge Kissinger also explained on the record that both during the trial and afterwards, he spent a lot of the time with the defendant and he did not find the defendant to be a particularly dangerous person. *Id.*

Fortunately, since those marijuana charges were levied years ago, the State of New Hampshire has reformed its law to permit the therapeutic use of marijuana under N.H. Rev. Stat. Ann. 126-X, and it has decriminalized possession of three-fourths of an ounce or less or marijuana under N.H. Rev. Stat. Ann §318-B:2-c. Consequently, notwithstanding the fact that the risk of violating conditions of release is not lawful grounds for pretrial detention, because of the changes in law, the risk that the defendant will violate any conditions of release by the continued use of marijuana is substantially reduced. Otherwise, the defendant has no other history to suggest he presents a danger to any person or the community.

***5. There are available conditions to assure the defendant's presence as required.***

Taking into account the above information, there is no clear or convincing evidence to support the government's argument that no conditions could reasonably assure the defendant's presence at trial. Although there are co-defendants that face much more serious charges against whom the weight of evidence is much greater, and who have more resources with which to flee, every single co-defendant has been released with conditions. All the defendant asks of this court is to be treated equitably and afforded the same opportunity to enjoy his civil rights to be presumed innocent unless proven guilty, and to be free under the same or similar conditions as the other co-defendants.

[3] Rich Paul Vindicated on Weapons Charges: VOP Hearings 2014 07 24 (Jul. 26, 2014), https://www.youtube.com/watch?v=aadKRVQ8Pi8.

**D. There is no lawful basis to detain the defendant under §3142(f)(2)(B).**

Section 3142(f)(2)(B) of the Act provides a rebuttable presumption in favor of detention upon motion of the government attorney or the judicial officer only in cases involving a serious risk that the accused will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. In *Ploof*, 851 F.2d at 8, the magistrate ordered pretrial detention of a defendant who was caught plotting to kill his girlfriend's husband. "The court felt defendant's activities with respect to the husband 'strongly suggest[] that [defendant] might intimidate witnesses in this and other criminal proceedings thus obstructing justice and endangering the safety of potential witnesses and the community,'" a section (f)(2)(B) argument. *Id.* Similarly, in this case, the government has based their motion for detention on an (f)(2)(B) "dangerousness" argument with which the magistrate agreed. ECF No. 93, 76. However, the court in *Ploof* found that this argument can only be sustained in cases involving one of the circumstances set forth in (f)(1) which is not applicable here. *Ploof*, 851 F.2d at 11. Nevertheless, the court in *Ploof* did go on to explain that in an (f)(2)(B) argument, the government should clearly specify whether detention is based on dangerousness under subsection (f)(1), or on witness intimidation or obstruction of justice under subsection (f)(2)(B). *Id.* at 12. And, in the latter situation, a finding of the subsection (f)(2)(B) conditions is necessary, including whether any conditions set forth in §3142(e) will *reasonably* assure the safety of any other person and the community. *Id.*

Previously, the government made no argument that the defendant's release might pose some risk of obstruction or witness intimidation. However, as evidenced by its latest filings with the court, the government has now changed its position. ECF No. 97. The government now argues that the phone call at issue indicates the defendant's "… release will cause a serious risk that he will attempt to threaten, injure, or intimidate witnesses" because he is "charismatic," has

"many followers," and "… there is no saying how his supporters will react to any future calls by him to take up arms against witnesses." ECF No. 97 at 4. The government goes on to state that "[t]he defendant has several drug convictions and had a substantial amount of pure methamphetamine in his bedroom on the day of his arrest," a statement which is both misleading and unfairly prejudicial. *Id.* at 5. The drug charges on the defendant's record principally relate to marijuana which has since been decriminalized in New Hampshire, and if the government truly believed the alleged methamphetamine was illegally possessed by the defendant, then why not bring criminal charges for this? The government also states that the defendant has a history of offenses involving defiance of government authority and violating condition of release, reasoning that "… he threatens violence against others, engages with dangerous drugs and does not follow court orders…." *Id.* These allegations are deeply troubling because the government continues to bring prejudicial allegations throughout these proceedings that have later proven to be false. For example, the government's pretrial services report states that the defendant was convicted of a violation of probation for wielding a Billie club in a threatening manner when the object was actually a camera monopod. *See* Exhibit A; n.3 at 8. Not only was this offense dismissed, but the court specifically found the defendant was not dangerous. *Id.*

Returning to the government's chronic myosis of the jail call, it does sound bad at first listen. But like a dog that is all bark and no bite, when one gets beyond the vitriol and profanity, it is clear that the defendant threatened absolutely no identifiable person or community. While the defendant may sometimes come across as likeable, he can hardly be described as influential. The defendant's only social media outlet is Facebook where he has less than 10,000 followers across several pages that he more or less abandoned in the last two years. Prior to his detention, his only public presence was through co-hosting the radio show Free Talk Live, and its listener base is unknown. By contrast, the world's Top 5 social media influencers by followers are

Cristiano Ronaldo at 517M, Justin Bieber with 455M, Ariana Grande at 429M, Selena Gomez at 425M, and Taylor Swift at 361M.[4] Political influencers making the top 50 include Barack Obama, Narendra Modi, and Donald Trump. *Id.* In comparison, characterizing the defendant as having some huge following and singular ability to cause a violent *coup d'état* is laughable.

If the government's assertions of authority to detain folks based on vague and ambiguous statements of violence were true, then the court in *Ploof* would have had no choice but to detain the defendant caught plotting to commit murder of a non-witness. *See Ploof*, 851 F.2d. However, because the subject of the murder plot was not a witness in the case, the court found the murder plot irrelevant to the motion for detention. *Id.* In *Patriarca*, the first circuit found that although defendant was a known Mafia Boss and "… had presided at a Mafia induction ceremony at which the inductees swore lifelong loyalty to the Mafia, and promised to kill any informants if instructed to do so," he had no penchant or personal aptitude for violence, and the court released Patriarca on house arrest. *United States v. Patriarca*, 948. F.2d 789, 792 (1st Cir. 1981). If plots for murder and Mafia boss status are not sufficiently clear and convincing to support detention, then so much less convincing are the defendant's vague and ambiguous statements made in anger and confusion to a trusted confidant.

## IV. CONCLUSION

What is clear and convincing in this case, however, is the consistent findings of multiple judicial officers in favor of the defendant's history and character, the totality of which points to the logical conclusion that of course there are conditions that would reasonably assure the defendant's presence as required and the safety of any person or the community. In the VOP hearing of 2014, Judge Kissinger stated the defendant is not a particularly dangerous person. n.3

[4] Omri Wallach, *The World's Top 50 Influencers Across Social Media Platforms.* Visual Capitalist, May 14 2021. https://www.visualcapitalist.com/worlds-top-50-influencers-across-social-media-platforms/.

at 8. In his order, Magistrate Lynch found that the only compelling evidence for detaining the defendant was the phone call. *See* ECF No. 76. And during the last hearing, this court stated that although the phone call was colorful, it did not signify dangerousness; rather, the concern was whether the defendant could comply with conditions of release. Although these concerns, without more, are legally insufficient to hold the defendant, this memorandum has nevertheless addressed them by explaining that the New Hampshire's recent decriminalization of marijuana make those concerns moot. Further, the defendant explained on the record that by obtaining a prescription for Adderall, he would have no need to self-medicate with marijuana.

In conclusion, the government has indeed failed to meet its burden of proof by clear and convincing evidence that there is no condition or combination of conditions that would reasonably assure the defendant's presence as required, or the safety of any person or the community, under either §3142(f)(1) or (f)(2) of the Bail Reform Act.

**THEREFORE**, for all of the reasons stated above, Defendant, Nobody, does respectfully request that this Court grant him a signature bond on term and conditions similar to those of the other co-defendants in this case.

*Signatures on following page.*

This 30th day of July, 2021

Respectfully submitted,

*/s/ Patrick Richard*

Patrick Richard
attyrichard@hotmail.com
Law Office of Patrick Richard
11 Kearney Sq.
Lowell, MA 01852
978-458-4279
Attorney for Nobody

*/s/ Anessa Allen Santos*

Anessa Allen Santos
anessa@intellilaw.io
IntelliLaw
14620 Black Quill Dr.
Winter Garden, FL 34787
239-494-3794
239-804-2033 (fax)
Attorney for Nobody – *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing motion was served by electronic service, on July 30, 2021, on all counsel or parties of record on the service list.

*/s/ Patrick Richard*

Patrick Richard