# UNITED STATES DISTRICT COURT

# FOR THE FEDERAL DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-00041-JL |
| | ) | |
| N/F/N NOBODY, | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

# TABLE OF CONTENTS

I. Introduction ............................................................................................................... 1
II. Factual and Procedural Background ..................................................................... 2
   A. The Bitcoin Exchange Scheme ..................................................................... 2
   B. Defendant's Role in the Bitcoin Exchange ................................................... 3
   C. The Charges and Plea Agreement ................................................................. 3
III. Statutory Penalties ................................................................................................... 4
IV. Sentencing Guidelines and Analysis ...................................................................... 4
   A. General Sentencing Standards ...................................................................... 4
   B. PSR Guidelines Range .................................................................................. 5
V. Sentencing Factors Under 18 U.S.C. §3553 .......................................................... 6
   A. Nature and Circumstance of the Offense ..................................................... 7
   B. The History and Characteristics of the Defendant ..................................... 10
   C. Respect for the Law .................................................................................... 11
   D. Deterrence ................................................................................................... 12
   E. The Importance of the Guidelines .............................................................. 12
VI. §3553 Analysis ...................................................................................................... 12
VII. Conclusion ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Concepcion v. United States*, 142 S. Ct. 2389, 2389 (2022) ........................................................... 4
*Gall v. United States*, 552 U.S. 38, 49 (2007) ................................................................................ 5
*In the Matter of: Coinflip, Inc., d/b/a Derivabit, and Francisco Riordan*, CFTC Docket No. 15-29. 2015 WL 5535736 (Sept. 17, 2015) ............................................................................................. 8
*Koon v. United States*, 518 U.S. 81 (1996) .................................................................................... 4
*Nelson v. United States*, 555 U.S. 350, 352 (2009) ....................................................................... 7
*Pepper v. United States*, 562 U.S. 476 (2011) ............................................................................... 5
*Rita v. United States*, 551 U.S. 338 (2007) ................................................................................... 5
*United States v. Booker*, 543 U.S. 220 (2005) ............................................................................. 13
*United States v. Watts*, 519 U.S. 148, 157 (1997) ........................................................................ 5

**Statutes**

18 U.S.C. §1343 ............................................................................................................................. 3
18 U.S.C. §1349 ............................................................................................................................. 3
18 U.S.C. §1960(a) ........................................................................................................................ 3
18 U.S.C. §3553(a) ........................................................................................................................ 6
18 U.S.C. §371 ............................................................................................................................... 3

**Other Authorities**

FIN-2013-G001, Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies, March 18, 2013 ................................................................................. 8
IRS Notice 2014-21 ....................................................................................................................... 8
U.S.S.G §5C1.1(d) ......................................................................................................................... 2
U.S.S.G. §2B1.1(b)(9) ................................................................................................................... 5
U.S.S.G. Manual §6A1.3, comment (2021) .................................................................................. 5
United States Sentencing Commission, Federal Sentencing: The Basics, 19 (2020) .................... 5

**Rules**

Fed. R. Crim. 11(c)(1)(B) .............................................................................................................. 1

COMES NOW, the defendant, Nobody (formerly Richard Paul), by and through his undersigned counsel, and files this Sentencing Memorandum to respectfully request that this Honorable Court find that an analysis of Section 3553(a) factors show that a downward variance from the Guidelines sentence is warranted and supports a sentence of time-served with a short period of supervised release to follow as sufficient, but not more than necessary to comply with the purposes of sentencing.

## I.   INTRODUCTION

The defendant, Nobody, first signed an agreement with the *Shire Free Church* on September 21, 2019, that was later amended on February 2, 2022. *See* ECF 93-7. Both agreements were administered by Ian Freeman, the church's founder and co-defendant in this case, and they employed Nobody as an independent contractor to provide services to the church's nonprofit bitcoin outreach program. *Id*. Pursuant to the terms thereunder, Nobody agreed to sell the church's bitcoin as instructed by Freeman, and to accept cash bank deposits from bitcoin purchasers into bank accounts established in Nobody's name and in the name of his church called *Church of the Invisible Hand*. *Id*. As contemplated by the agreements, Freeman directed Nobody to open an account in his personal name at TD Bank in July 2019 that was closed shortly after in October 2019. *See* ECF 136 (Plea Agreement) at 3. The account statements demonstrate that this account was used almost exclusively to further Freeman's virtual currency business, resulting in at least one interstate wire transfer that supports the instant charge of wire fraud. *Id*.

The government acknowledges that Nobody promptly recognized and affirmatively accepted personal responsibility for relating false information to the bank about the purpose of the account early and in a fulsome manner, and has thus enabled the government to avoid preparing for trial and for the efficient allocation of government and Court resources. *See id*. at 6-7.

Accordingly, pursuant to Fed. R. Crim. 11(c)(1)(B), the government and the defendant both stipulated and agreed for a recommended sentence at the bottom of the Guidelines range as determined by this Court. *See id*. at 5. The Guidelines as provided by the PSR is based on a total offense level of eight and a criminal history category of IV, resulting in a range of 10-16 months that "… may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to subsection (3), provided that at least one-half of the minimum term is satisfied by imprisonment. U.S.S.G §5C1.1(d)." *See* ECF 165 (PSR) at ¶105.

Also important to the discussion of an appropriate sentence is that the government agreed "… that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense." *See* ECF 136 at 6.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Bitcoin Exchange Scheme

In March 2021, six co-defendants, including Nobody, were arrested and criminally charged with engaging in a common enterprise that sold bitcoin to purchasers in exchange for U.S. dollars, for a profit, and without the registration, record-keeping, or reporting required of a money services business, among other alleged offenses. *See* ECF 1 (Indictment) at ¶1. The indictment filed on March 15, 2021, alleges that the co-defendants opened multiple bank accounts at U.S. financial institutions under the false pretense of operating one or more charitable organizations to deceive banks about the nature of their bitcoin exchange business lest the banks refuse to grant requested accounts. *Id.* at ¶¶ 3-4. The facts and circumstances surrounding the actions of each co-defendant differ and have resulted in a variety of criminal charges and allegations of damages.

### B.     Defendant's Role in the Bitcoin Exchange

Nobody does not dispute that he entered into both agreements with *Shire Free Church* to act as an assistant to co-defendant Freeman, and to open a personal bank account to receive deposits from purchasers of Freeman's bitcoins. Nobody has admitted that he did deceive TD Bank by convincing them that the account ending in 3215 was for personal purposes when it was, in fact, to further Freeman's bitcoin exchange business. *See* ECF 136 at 3. As a result, on October 4, 2019, $10,000 was transferred in interstate commerce from a TD Bank branch in Glen Burnie Maryland to Nobody's account using a wire transfer. *Id*. He further admits that had the bank known his true intentions for the account, it is unlikely they would have permitted him to open it. *Id*. These specific facts are what support Nobody's guilty plea to the charge of wire fraud that is the subject of this Sentencing Memorandum.

### C.     The Charges and Plea Agreement

On March 15, 2021, Nobody and his co-defendants were charged by indictment with 20 counts that include offenses of unlicensed money transmission, wire fraud, continuing financial crimes enterprise, and money laundering. *See generally*, ECF 1 (Original Indictment). Of these, Nobody was charged with one count of conspiracy to operate an unlicensed money transmitting business in violation of 18 U.S.C. §§ 371, 1960(a) and (b)(1)(B); one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 1349; and three counts of wire fraud in violation of 18 U.S.C. §1343. Incidentally, after Nobody's plea of guilty was accepted by this Court, the government filed a 33-count Superseding Indictment as to co-defendants Ian Freeman and Aria DiMezzo. *See* ECF 139 (Superseding Indictment).

On March 16, 2016, Nobody was arrested at his home in Keene, New Hampshire, and remained incarcerated for 171 days until an order for his release with conditions was granted by

this Court on September 1, 2021. When he proved to this Court he could comply with the terms of conditional release, the government and this Court did assent to the modification of those conditions on February 23, 2022, that permitted greater freedom of association and movement. *See generally*, ECF 128, 129. Since then, Nobody has continued to comply with each condition of his release save for the prohibition on marijuana for personal use, a habit about which he has been repeatedly candid with this Court and the U.S. Probation Office. *See* ECF 165 (PSR) at ¶9.

When the government presented an opportunity to Nobody for a reverse proffer to induce a Plea Agreement, Nobody immediately indicated his willingness to participate. This quick engagement did result in a speedy resolution where the government dismissed four criminal counts against Nobody in exchange for his plea of guilty to one charge of wire fraud in violation of 18 U.S.C. §1343 in reference to the TD Bank account through which $10,000 was transferred.

### III.   STATUTORY PENALTIES

Nobody now faces sentencing a single count of 18 U.S.C. §1343 for wire fraud. As noted by the Plea Agreement and the U.S. Probation Office, he faces (1) up to 30 years of imprisonment, (2) a fine up to $1,000,000, (3) a term of supervised release of not more than five years, (4) a mandatory special assessment of $100 for each count of conviction, and (5) payment of restitution to the victim of the offense.

### IV.   SENTENCING GUIDELINES AND ANALYSIS

#### A.   General Sentencing Standards

"There is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her 'as an individual.'" *Concepcion v. United States*, 142 S. Ct. 2389, 2389 (2022); (*See also*, *Koon v. United States*, 518 U.S. 81 (1996)). "When a defendant appears for sentencing, the sentencing court

considers the defendant on that day, not on the date of his offense or the date of his conviction." *Concepcion*, 142. S. Ct. at 2389; (quoting *Pepper v. United States*, 562 U.S. 476 (2011)). When determining an appropriate sentence, a district court should begin by correctly calculating the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007); (quoting *Rita v. United States*, 551 U.S. 338 (2007)).

### B. PSR Guidelines Range

According to the PSR, the U.S. Probation Office calculated Nobody's adjusted offense level using the 2021 United States Sentencing Guidelines Manual (U.S.S.G.) as follows:

**The Offense Score**
Base offense level (U.S.S.G. §2B1.1)......................................................................7
Specific offense characteristics (charitable organization) .................................. +3
Total adjusted offense level (subtotal)....................................................................10
Acceptance of responsibility (U.S.S.G. §3E1.1) ................................................... -2
*Total offense level* ....................................................................................................8

*See* ECF 165 (PSR) at ¶¶ 43-52.

The parties agree, and the U.S. Probation Office recommends, that a three-level upward SOC adjustment is appropriate under U.S.S.G. §2B1.1(b)(9) because conduct related to the instant offense of wire fraud did involve the representation of activity on behalf charitable organizations as part of the overall bitcoin exchange scheme. "[Relevant] conduct need not have been formally charged or proved at a trial (or admitted by a defendant in a guilty plea), so long as the sentencing judge finds the relevant conduct by a preponderance of the evidence using information that has sufficient indicia of reliability." United States Sentencing Commission, *Federal Sentencing: The Basics*, 19 (2020); *See generally* U.S.S.G. Manual §6A1.3, comment (2021); *see also United States v. Watts*, 519 U.S. 148, 157 (1997).

The PSR accurately states the relevant conduct as follows:

> … the offense involved a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency. ... Nobody misrepresented that he was acting on behalf of a religious organization when he opened accounts at JP Morgan Chase and Bank of America in the name of the Church of the Invisible Hand in furtherance of the scheme to operate an unlicensed money services business (MSB).

ECF 165 at ¶45.

Moreover, the Plea Agreement confirms the relevant conduct as follows:

> … the defendant opened and operated accounts at financial institutions as personal accounts in his name and business accounts in the name of the Church of the Invisible Hand in order to allow Ian Freeman to use the accounts to operate his unlawful virtual currency exchange business. At the time he opened the accounts (or provided Freeman with access to the accounts) he knew that they would not be used as personal accounts or for a church, but instead would be used by Ian Freeman to trade virtual currency.

ECF 136 at 2.

Consequently, a total offense level of 8, when added to a criminal history score of 9 (category IV), results in a sentencing range of 10-16 months which Nobody does not dispute.

## V.     SENTENCING FACTORS UNDER 18 U.S.C. §3553

Although the Guidelines should be the starting point and the initial benchmark for sentencing, they are not the only consideration. *Gall,* 552 U.S. at 49. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50. Under §3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. §3553(a). The purposes of sentencing, pursuant to §3553(a)(2) are as follows:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed … training, medical care, or other correctional treatment in the most effective manner.

The Section 3553(a) factors also mandate the court to consider (1) "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); (2) "the history and characteristics of the defendant," *id.*; (3) the promotion of "respect for the law," 18 U.S.C. §3553(a)(2)(A); (4) "deterrence," 18 U.S.C. §3553(a)(2)(B); (5) the Guidelines and Guideline range, 18 U.S.C. §3553(a)(4); (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553(a)(6); and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a)(7).

Of course, a "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply," *Rita v. United States*, 551 U.S. 338, 31 (2007), and it "may not presume that the Guidelines range is reasonable," *Gall*, 552 U.S. at 39; *Nelson v. United States*, 555 U.S. 350, 352 (2009). However, examination of several Section 3553(a) factors suggests that a downward variance from the Guidelines sentence is warranted in this case and that supports a sentence of time-served with a short period of supervised release to follow as sufficient, but not more than necessary to comply with the purposes of sentencing.

### A. Nature and Circumstance of the Offense

As earlier stated, Nobody does admit that commencing on September 21, 2019, he did enter into agreements with, and performed services for approximately 18 months as an assistant for co-defendant Freeman and his bitcoin exchange business that had been operating since 2016. Moreover, he admits that he did misrepresent the purposes for opening accounts with banks, and was aware that Freeman was doing the same. However, he makes these admissions as a point of technicality, and not as part of a grand scheme to defraud the government, society, financial institutions, or any individual. Rather, as Nobody has consistently stated throughout this case, he is of the sincere opinion and belief that the U.S. federal reserve has become tyrannical and is

actively operating outside its nascent constitutional authority. Even so, Nobody is no anarchist, and he holds no thought to overthrow these agencies of government. Instead, he looks to the hope of the free market to liberate him and others from what he perceives as growing economic tyranny. The global growth and adoption of bitcoin presented hope to Nobody, and millions of other people around the world share in that hope.

Since the advent of bitcoin in 2010, the U.S. government has quickly regulated what it sees as a currency competitive to the global hegemony of the dollar. As early as 2013, the Financial Crimes Enforcement Network (FinCEN) released formal guidance clarifying that the Bank Secrecy Act applies to "… persons creating, obtaining, distributing, exchanging, accepting, or transmitting virtual currencies." FIN-2013-G001, *Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, March 18, 2013. In 2014, the IRS issued a Notice recognizing that "[v]irtual currency is a digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value." IRS Notice 2014-21. In 2015, the CFTC came forward and defined bitcoin and other virtual currencies as commodities under the U.S. Commodity Exchange Act. *See In the Matter of: Coinflip, Inc., d/b/a Derivabit, and Francisco Riordan, CFTC Docket No. 15-29.* 2015 WL 5535736 (Sept. 17, 2015). And, in a speech delivered in 2018, former SEC Director William Hinman explained that whether a virtual currency represents a security "… requires a careful and fact-sensitive legal analysis [involving] how it is being sold and the reasonable expectations of the purchasers."[1]

In summary, bitcoin is now deemed a commodity that has achieved such widespread adoption that it has been ruled a *medium of exchange* that subjects its offer and sale at market

---

[1] Hinman, W., 2018. *SEC.gov | Digital Asset Transactions: When Howey Met Gary (Plastic)*. [online] Sec.gov. Available at: https://www.sec.gov/news/speech/speech-hinman-061418.

prices to the regulation of FinCEN. Meanwhile, other virtual currencies that lack network decentralization may be marked as securities until they achieve such market integration that they will also be regulated by FinCEN. What are the hallmark characteristics on the road to turning a virtual currency from a security into a commodity that is regulated as a complementary currency? We must wait for our regulators to tell us and pray we do not miss the news, as transmitting a medium of exchange without the requisite license is severely punished with strict liability.

The defendant, Nobody, intended to trade in a commodity for market prices which, for any other commodity not competitive with the dollar, is not subject to regulatory oversight by FinCEN, nor does it raise the suspicion of banks or federal prosecutors. He could not understand why the banks would refuse to service bitcoin traders when he had a no action letter from the Banking Department of the State of New Hampshire and a formal written opinion from Attorney Seth Hipple, both explaining that the peer-to-peer sale of bitcoin required no license. *See* ECF 56-1; *see also* ECF 56. Because Nobody had two letters of authority that granted him express permission to sell bitcoin direct to purchasers, he believed that the banks denial of account access was rooted in antitrust behavior, and that questioning the details of his business was tantamount to an invasion of privacy. He never imagined that there was a different federal law that preempted his own state law, or that Attorney Hipple would commit malpractice by providing him with incorrect counsel.

Moreover, Nobody consistently maintains that at no time did he ever think he was participating in some wide scheme to defraud innocent persons to induce them into purchasing bitcoin. Although he was aware that such schemes existed within the industry, he insists that in the course of business, several purchasers were rejected because they were believed to be victims of scams. Consequently, the thought that Freeman could possibly perpetrate a mass fraud that would deceive even the defendant is incredulous, and it causes him extreme emotional distress to even

consider it. In summary, Nobody strongly impresses upon this Court his deepest regret that he was entirely misled about the legality of his actions. While he assumes full responsibility for telling lies about the nature of his business to persuade the banks to open accounts, he did not know that he was operating an unlicensed money services business, nor that the banks had a right to know such details.

### B. The History and Characteristics of the Defendant

Nobody is arguably a public figure in Keene where he has resided for the last decade. He is a talk show host of the nation's first radio show dedicated to cryptocurrency called *Free Talk Live,* and a former candidate for Governor of New Hampshire. He has a long and admirable career as a computer programmer and enjoys studying civics, philosophy, and economics in his free time. He is a proud libertarian, and his radio show audience enjoys his colorful antics and enthusiasm for traditional constitutional rights, *laissez-faire* government, and peaceful activism. N.H. Rep. Mark Warden recognizes Nobody as a "… proponent of peaceful protest, free speech, expanding freedom and advancing peace at the local, state and global level." ECF No. 73. In his letter of support, Rep. Warden urges this court "… to look kindly on Mr. Paul as a productive citizen, one who promotes the very ideals of liberty and freedom of speech and association on which this country was founded." ECF No. 73.

Nobody's work as a software programmer provided him with a middle-class standard of living until the death of his common law wife, Julie Taylor in 2002. Subsequently, Nobody spiraled into depression and poverty that occasionally dips into suicidal ideation. He struggles with ADHD and anxiety for which he is prescribed Adderall, and he takes marijuana to help with the anxiety. He has expressed he would like very much to obtain a medical marijuana card, but he does not possess the funds to pay for the medical expense involved.

### C.     Respect for the Law

As set forth in the PSR, Nobody does have a criminal history that is peppered with charges for possession of small amounts of marijuana for personal use. He has been incarcerated and placed on supervised release but presents no danger to society. In fact, there is compelling evidence of his peacefulness. In 2014, Nobody was charged with violation of probation for using marijuana, and for wielding a camera monopod during a peaceful protest that went awry. During the VOP hearing at Cheshire Superior Court, Judge Kissinger found that Nobody materially complied with the conditions of probation, and that he was generally quite law abiding aside from his continued marijuana use, a fact Nobody openly conceded then and continues to concede before this Court now.[2] Moreover, since those marijuana charges were applied years ago, New Hampshire has reformed its law to permit the medicinal use of marijuana under N.H. Rev. Stat. Ann. 126-X, and it has decriminalized possession of 3/4ths of an ounce or less of marijuana under N.H. Rev. Stat. Ann. §318-B:2-c. Consequently, Nobody respectfully argues that the addition of three points for possession of very small amounts of marijuana for personal use that would be legal under New Hampshire law today results in an overstatement of the serious of those offenses, and results in an inequitable Guidelines sentence.

Upon motion for conditional release, this Court expressed serious concern that Nobody could comply with the strict terms of release. Yet, since his release on September 1, 2021, Nobody has complied save for the exception of continued marijuana use, a matter about which he is consistently candid. Arguably, the "legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law is at least to some extent offset by the fact that … "

---

[2] Rich Paul Vindicated on Weapons Charges: VOP Hearings 2014 07 24 (Jul. 26, 2014), https://www.youtube.com/watch?v=aadKRVQ8Pi8.

Nobody has already served 171 very difficult days in prison followed by 11 months of substantial restrictions in freedoms. *See Gall*, 552 U.S. at 52. For all of the above reasons, Nobody respectfully request that this Honorable Court find that a downward variance from the Guidelines sentence is warranted and supports a sentence of time-served with a short period of supervised release to follow as sufficient, but not more than necessary to comply with the purposes of sentencing.

### D. Deterrence

A significant sentence is required "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. §3553(a)(2)(B). The defendant respectfully submits that 171 days of incarceration followed by 11 months of extreme restriction on freedoms should serve as a serious deterrent to even the most willfully blind of bitcoin traders.

### E. The Importance of the Guidelines

The Sentencing Guidelines must be given due consideration. "The fact that § 3553(a)[(4)] explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50, n.6. First, "the sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the [Guidelines range] with reference to the latter." *Nelson*, 555 U.S. at 350.

### VI. §3553 ANALYSIS

The Guidelines sentence range provided by the PSR is based on a total offense level of eight and a criminal history category of IV, resulting in a range of 10-16 months that "… may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention

according to subsection (3), provided that at least one-half of the minimum term is satisfied by imprisonment. U.S.S.G §5C1.1(d)." *See* ECF 165 (PSR) at ¶105. However, Nobody contends that this Guidelines overly exaggerates the seriousness of possessing small amounts of marijuana that form the basis of three points attributed to the criminal sentencing history, especially since the same conduct would be excused under today's revised laws.

In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court instructed district courts to read the Guidelines as "effectively advisory," *id.,* at 245, and that, "… courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *See Rita*, 551 U.S., at 351. Section §3553(a) also instructs district courts to "impose a sentence sufficient, but not greater than necessary," to serve the purposes of sentencing which include "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. §3553(a).

The court may exercise its discretion to consider a variance under any factor alone, or under the totality of the §3553(a) factors. For example, in *Kimbrough v. United States*, 552 U.S. 85 (2007), the U.S. Supreme Court upheld the decision of the District Judge to sentence Kimbrough 4.5 years below the bottom of the Guidelines range on possession of crack cocaine charges based on the District Judge's assessment of the particular circumstances of the case and that the crack/powder disparity is at odds with §3553(a). Similarly, Nobody requests that this Court consider that the current attitude toward possession of small amounts of marijuana for personal use is at odds with the results Nobody would suffer if it were afforded three points on his criminal history. For this reason, he respectfully requests for a downward deviation of in his criminal history score from nine to six (Category III). This would shift the sentencing range from 10-16 months to

6-12 months, which is substantial because Nobody has already served 171 days of incarceration, meaning he could satisfy the Guidelines with a sentence of time-served and a short period of supervised release to follow with consideration for the restrictions of pre-trial release he has already suffered for 11 months.

## VII.   CONCLUSION

For the reasons set forth above, the defendant, Nobody, respectfully requests that this Court grant a downward variance of three points from the Guidelines sentence, and impose upon Nobody a sentence of time-served with a short period of supervised release to follow as sufficient, but not more than necessary to comply with the purposes of sentencing.

This 18th day of July, 2022                                   Respectfully submitted,

                                                      */s/ Patrick Richard*_____
                                                      Patrick Richard
                                                      attyrichard@hotmail.com
                                                      NH Bar#:  12934
                                                      150 Westford Road, Suite 26
                                                      Tyngsborough, MA 01879
                                                      978-458-4279
                                                      Attorney for Nobody


                                                      */s/ Anessa Allen Santos*_____
                                                      Anessa Allen Santos
                                                      anessa@intellilaw.io
                                                      IntelliLaw
                                                      14620 Black Quill Dr.
                                                      Winter Garden, FL 34787
                                                      239-595-3794
                                                      Attorney for Nobody – *Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing motion was served by electronic service, on July 18, 2022, on all counsel or parties of record on the service list.

>*/s/ Patrick Richard*_____
>Patrick Richard